T.C. Memo. 2001-289

UNITED STATES TAX COURT

JACK B. NEWHART, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18226-99.                    Filed October 31, 2001.

<u>Richard C. Miller</u>, for petitioner.

<u>Kenneth P. Dale</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax (tax) for 1995 in the amount of
$18,181.

The issues remaining for decision[1] are:[2]

(1)  Did petitioner materially participate in a certain business within the meaning of section 469(h)(1)?[3]  We hold that he did not.

(2)  Is petitioner entitled to deduct under section 212 certain claimed expenses with respect to a rental property that he owned?  We hold that he is not.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Redwood City, California.

Petitioner was a full-time employee of Scimed/Boston Scientific Corporation (Scimed), a medical device corporation, working 10 to 12 hours a day in that company's sales operations. The sales territory of petitioner, who resided in Foster City, California (Foster City), included California, Nevada, and Hawaii.  Petitioner's employment with Scimed required him to travel an aggregate of about one week each month.

---

[1]Computational issues also remain, resolution of which flows automatically from our resolution of the issues that we address herein.

[2]Although not expressly stated except where needed for clarity, our statement of issues, Findings of Fact, and Opinion pertain to the year at issue unless otherwise indicated.

[3]All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Chicken Bar

During 1991, petitioner, Marc Caplan (Mr. Caplan), a friend of petitioner who lived in Lake Oswego, Oregon (Lake Oswego),[4] and three other individuals incorporated Chicken Bar, Inc. (Chicken Bar), under the laws of the State of Oregon. At all relevant times including 1995, Chicken Bar owned and operated a fast food restaurant (Chicken Bar restaurant), located in Beaverton, which is near Portland.

At all relevant times including 1995, petitioner owned 35 percent, Mr. Caplan owned 35 percent, and three other individuals owned the remaining 30 percent of the stock of Chicken Bar. The board of directors of Chicken Bar consisted of five members, two of whom were petitioner and Mr. Caplan.[5]

Mr. Caplan was the president, and petitioner was the secretary, of Chicken Bar. Mr. Caplan, as president, had primary responsibility for the day-to-day management and operations of Chicken Bar, including the Chicken Bar restaurant.[6] Petitioner,

[4]Lake Oswego is near Portland, Oregon (Portland), and Beaverton, Oregon (Beaverton). In addition to Mr. Caplan, petitioner had two or three other friends who lived in the Portland area.

[5]The bylaws of Chicken Bar provided in pertinent part that "The business and affairs of the corporation shall be managed by a Board of Directors who shall exercise or direct the exercise of all corporate powers".

[6]The bylaws of Chicken Bar provided in pertinent part that the president "shall * * * have general supervision, direction
(continued...)

as secretary, had no responsibility for the day-to-day management and operations of Chicken Bar, including the Chicken Bar restaurant.[7]

Sometime during 1994, Chicken Bar hired a general manager

---

[6](...continued)
and control of the business and affairs of the corporation. * * * He shall have the general powers and duties of management usually vested in the office of President of a corporation".

[7]Article III of the bylaws of Chicken Bar provided in pertinent part:

Section 4.  SECRETARY

(a)  The Secretary shall keep or cause to be kept at the principal office or such other place as the Board of Directors may order, a book of minutes of all meetings of directors and shareholders showing the time and place of the meeting, whether it was required by the Bylaws of the corporation, how authorized, the notice given, the names of those present at Directors' meetings and the proceedings thereof.

(b)  The Secretary shall keep or cause to be kept at the principal office of the corporation's transfer stock agent, a share register, or a duplicate share register, showing the names of the shareholders and their addresses, the number of shares held by each, the numbers and dates of certificates issued for such shares, and the number and date of cancellation of each certificate surrendered for cancellation.

(c)  The Secretary shall give or cause to be given such notice of the meetings of the shareholders and of the Board of Directors as is required by the Bylaws, and shall have such other powers and perform such other duties as may be prescribed by the Board of Directors or Bylaws.

(d)  The Secretary shall be responsible for the funds of the corporation, and have payments made only on the check of the corporation signed in the manner authorized by the Board of Directors.

(general manager) who was to be directly responsible for planning and implementing its objective of opening three additional restaurants. During 1995, $180,000 was made available to the general manager in order to enable him to accomplish that objective. Through the efforts of the general manager, sometime during 1995, a new corporation was organized,[8] which opened and operated a fast food restaurant in Beaverton. Because the general manager exhausted the entire $180,000 that had been made available to him in order to open only one restaurant in 1995, his services were terminated around March 15, 1995.

Petitioner did not keep a contemporaneous log of any activities that he undertook with respect to the Chicken Bar business. At a time or times not disclosed by credible evidence in the record, petitioner prepared a handwritten document entitled "1995 - CHICKEN BAR LOG BOOK OF TIME SPENT ON CHICKEN BAR BUSINESS" (1995 document). The 1995 document contains a series of entries[9] consisting of (1) very brief summaries of certain activities that petitioner claims he undertook with respect to the Chicken Bar business, (2) the respective dates on which petitioner claims he undertook those activities, and (3) the number of hours that he claims he spent on each such

---

[8]The record does not disclose the identities of the stockholders, the officers, and other employees of the corporation organized in 1995.

[9]The 1995 document contains 151 entries.

activity.  The 1995 document does not indicate where petitioner claims he undertook the various activities listed in that document or whether petitioner was required to travel in order to perform any of those claimed activities.

The following chart shows the total number of hours listed in the 1995 document that petitioner contends he spent on certain types of activities:

| Claimed Types of Activities | Claimed Total Hours |
| --- | --- |
| Review of management files and responsibilities | 2 |
| Review of catering functions with local schools | 2.5 |
| Review of, and/or planning, new business sites | 3.5 |
| Review of, and/or recommendations on, employee hiring criteria and/or employee pay scales | 9 |
| Review of, and/or recommendations on, menu items and/or pricing | 17.5 |
| Review of employee files | 18.5 |
| Review of, and/or drafting of, budgets | 19.5 |
| Review of prospective purchase proposals | 22.5 |
| Internet search for, and/or study of, licensing information and/or opportunities | 25 |
| Review of payroll reports | 28 |
| Review of past growth and/or drafting of, or review of, projections relating to expansion | 28.5 |

| | | |
|---|---|---|
| Discussions with Mr. Caplan regarding: | | 32.5 |
|     Franchising concepts and possibilities | 4 | |
|     Advertisements, budgets, and payroll | 4 | |
|     Licensing and franchising | 4 | |
|     Pro forma | 3.5 | |
|     Employee issues, wages, and payroll | 5 | |
|     Budget and menu items | 4 | |
|     Financial reports | 3.5 | |
|     Current financial status | 4.5 | |
|     Budgets for 1995 and 1996 | [1] | |
| Review of, and/or recommendations on, budgets | | 33 |
| Advertisement and media review and/or study | | 35.5 |
| Internet stock market search and/or comparison analysis to Chicken Bar | | 41.5 |
| Internet searches for, and/or study of, franchising information and/or opportunities | | 46.5 |
| Internet searches for, and/or analysis of, restaurant statistics | | 59.5 |
| Review and analysis of financial reports | | 98 |
| Total Hours Listed | | [2]523 |

[1]The 1995 document does not show any number of hours for the entry relating to claimed discussions with Mr. Caplan regarding budgets.

[2]The 1995 document shows the total number of hours listed in that document as 524.  That total is wrong.

The following chart shows the total number of hours listed in the 1995 document that petitioner claims he spent on each day of the week on the activities listed in that document:

| Day of the Week for Which Entries Were Made | Total Hours Shown for Each Day of the Week |
|---|---|
| Mondays | 36.5 |
| Tuesdays | 30.5 |
| Wednesdays | 29 |
| Thursdays | 17 |
| Fridays | 116 |

| | |
|---|---|
| Saturdays | 150 |
| Sundays | 144 |

Tacoma Property

Petitioner owned certain rental real property (Tacoma property) located in Tacoma, Washington (Tacoma), a city in which various members of his family lived, including his father Jack E. Newhart, his mother Juanita Demas, his brother David Newhart, and his sister Julie Ayala.

Stan Cybaliski (Mr. Cybaliski) managed the Tacoma property on behalf of petitioner. Mr. Cybaliski was a property manager who worked for Clover Creek Realty, a real estate company owned by Roy Burnsides. As the property manager, Mr. Cybaliski was responsible for, inter alia, collecting the rent and soliciting bids when the Tacoma property needed work. Petitioner paid approximately $50 a month for the management of the Tacoma property.

Petitioner traveled at various times to Portland and to Tacoma. Petitioner's trips to Portland were usually made in combination with his trips to Tacoma (combination trips). On his combination trips, petitioner usually: Drove from his home in Foster City to the airport in San Francisco, California (San Francisco), flew from that airport to the Portland airport, rented a car, drove to Tacoma, returned the rental car to Portland, flew from the Portland airport to the San Francisco airport, and drove home to Foster City. A one-way trip from

petitioner's home in Foster City to Portland took approximately three hours, including ground transportation.

During 1997, at the recommendation of the revenue agent examining petitioner's 1995 tax return (return), petitioner prepared a handwritten document entitled "JACK NEWHART TRAVEL LOG & EXPENSES" (1997 document).  The 1997 document contains a series of entries consisting of (1) very brief summaries of certain activities that petitioner claims he undertook with respect to both the Chicken Bar restaurant and the Tacoma property, (2) the respective dates on which petitioner claims he undertook those activities, and (3) the respective locations at which petitioner claims such activities took place.  The 1997 document does not indicate the number of hours that petitioner claims he spent on the activities listed in that document.

Petitioner paid the amounts indicated with respect to the following airplane flights from San Francisco:

| Departure Date | Destination | Amount |
|---|---|---|
| 3/19/95 | Portland | $178 |
| 5/19/95 | Portland | 210 |
| 7/17/95 | Portland | 125 |
| 8/4/95 | Seattle, Wash. (Seattle) | 125 |
| 8/7/95 | Portland | 203 |
| 8/25/95 | Portland | 198 |
| 9/22/95 | Portland | 101 |
| 11/15/95 | Portland | 111 |
| 11/22/95 | Portland | 101 |
| 12/20/95 | Portland | 91 |
| | Total | $1,443 |

Petitioner paid the amounts indicated with respect to the following car rentals:[10]

| Date | Location Where Car Was Rented | Amount |
|------|-------------------------------|--------|
| 6/4/95 | Portland | $41.30 |
| 8/7/95 | Portland | 98.99 |
| 10/2/95 | Portland | 107.34 |
| 11/26/95 | Portland | 231.00 |
| | Total | $478.63 |

Petitioner paid the amounts indicated with respect to the following meals:

| Date | Location Where Meal Took Place | Amount |
|------|-------------------------------|--------|
| 3/18/95 | [1] | $263.00 |
| 5/20/95 | [1] | 235.00 |
| 7/19/95 | Tacoma | 187.00 |
| 8/4/95 | Tacoma | 197.22 |
| 8/26/95 | [1] | 427.00 |
| 9/23/95 | [1] | 278.00 |
| 11/15/95 | [1] | 158.00 |
| 11/22/95 | Tacoma | 276.00 |
| 12/18/95 | [1] | 455.00 |
| | Total | $2,476.22 |

[1]There is no credible evidence in the record disclosing the location at which the meal took place.

Petitioner paid the amounts indicated with respect to the following hotel expenses:

---

[10]On Dec. 23, 1995, an individual identified as "Jack Newhart" rented a car in Seattle and returned that car at the Portland airport on Dec. 27, 1995. The total charges for that rental car were $365.21. No credible evidence in the record discloses whether the individual who rented the car over the period Dec. 23-27, 1995, was Jack B. Newhart, petitioner in this case, or Jack E. Newhart, his father.

| Date | Location Where Hotel Was Located | Amount |
|------|------|------|
| 6/6/95 | Lake Oswego | $112.80 |
| 10/2/95 | Beaverton | 225.66 |
| 11/28/95 | Lake Oswego | 104.49 |
| 12/26/95 | Lake Oswego | 116.74 |
| | Total | $559.69 |

Petitioner paid the amounts indicated with respect to the following types of expenses:

| Date | Type of Expense | Location Where Expense Was Paid | Amount |
|------|------|------|------|
| 3/23/95 | Parking | San Francisco airport | $85 |
| 8/6/95 | Parking | San Francisco airport | 50 |
| 8/6/95 | Gasoline | Federal Way, Wash. (Federal Way) | 9 |
| 11/25/95 | Parking | San Francisco airport | 84 |
| 11/25/95 | Gasoline | Federal Way | 12 |
| 12/21/95 | Parking | San Francisco airport | 44 |
| | | Total | $284 |

Petitioner's Return for the Year at Issue

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 1995 (1995 return).

The 1995 return included Schedule E, Supplemental Income and Loss (Schedule E). With respect to the Tacoma property, the 1995 Schedule E reported rental income of $10,200 and claimed rental expenses of $24,505, which included $4,896 of claimed "TRAVEL" expenses (petitioner's claimed traveling expenses), and a Schedule E loss of $14,305.

On a date not disclosed by the record, Chicken Bar, an S corporation, issued petitioner Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., for 1995. That schedule indicated, inter alia, that petitioner's pro rata share of Chicken Bar's ordinary loss from trade or business activities (Schedule K-1 loss) was $19,412.

On a date not disclosed by the record, petitioner filed Form 1040X, Amended U.S. Individual Income Tax Return (Form 1040X), for 1995. In Form 1040X for 1995, petitioner claimed, inter alia, the Schedule K-1 loss of $19,412 attributable to Chicken Bar and a refund of $5,937. On February 3, 1997, the Internal Revenue Service sent petitioner a refund of $5,937 with respect to his 1995 tax year.

Notice of Deficiency

In the notice of deficiency (notice) issued to petitioner for 1995, respondent determined, inter alia, to disallow $19,212 of the $19,412 Schedule K-1 loss that petitioner claimed in the 1995 Form 1040X on the ground that petitioner did not materially participate in the Chicken Bar business within the meaning of section 469(h)(1). Respondent further determined to disallow petitioner's claimed traveling expenses of $4,896 on the ground that petitioner "did not prove that the amount shown [$4,896] was (a) rental expense, and (b) paid".

OPINION

Petitioner bears the burden of showing error in the determinations in the notice that remain at issue.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deductions claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Petitioner attempted to satisfy his burden of proof through his own testimony and certain documentary evidence, including the 1995 document, the 1997 document, and certain alleged receipts for a claimed car rental expense,[11] taxi expense, and meal expenses.[12]  We found petitioner's testimony to be questionable and not credible in certain material respects.  We also found the 1995 document,[13] the 1997 document, and the alleged car rental

---

[11]Petitioner relies on a receipt issued to "Jack Newhart" for a rental car expense incurred for the period Dec. 23-27, 1995.  See supra note 10.

[12]Petitioner relies on nine claimed meal receipts.  Eight of those nine receipts consist of restaurant chits (chits) that were removed from certain restaurant bills and that were filled in by hand.  Only four of those eight chits indicate the names of the restaurants at which petitioner contends he ate meals, the cost of which he is claiming as rental expense deductions under sec. 212.  Two of those four chits also indicate the locations of the restaurants.  Petitioner indicated in his handwriting on each of the nine claimed meal receipts the individuals who he contends attended each of the meals in question and the purpose that he claims for each such meal.  Petitioner's handwriting on two of the claimed meal receipts indicates that his mother Juanita Demas attended the meals to which those receipts purportedly refer.

[13]The 1995 document contains a series of entries claiming
(continued...)

receipt, taxi receipt, and meal receipts to be questionable and not credible. In this connection, virtually all of that documentary evidence was prepared by petitioner whose testimony we found to be questionable and not credible in certain material respects; we found certain inconsistencies and/or discrepancies between the 1995 document and the 1997 document;[14] and we found

---

[13](...continued)
that petitioner spent a total of 523 hours on certain activities with respect to the Chicken Bar business. Of those total claimed hours, the 1995 document indicates that throughout 1995 petitioner allegedly spent 36.5 hours on Mondays, 30.5 hours on Tuesdays, 29 hours on Wednesdays, 17 hours on Thursdays, and 116 hours on Fridays, or a total of 229 hours on weekdays. Petitioner also claims in the 1995 document that during 1995 he spent a total of 294 hours on weekend days in activities with respect to the Chicken Bar business. Petitioner testified that he spent between 10 to 12 hours a day, or 50 to 60 hours each workweek, working for Scimed and that his employment with that company required him to travel an aggregate of about one week each month. Given that each workweek petitioner worked for Scimed 10 to 12 hours a day and that he traveled for that company an aggregate of one week each month, we find the total number of hours, especially weekday hours, shown in the 1995 document as hours that petitioner spent in undertaking activities with respect to the Chicken Bar business to be highly suspect.

[14]Many of the entries in the 1997 document contradict, or otherwise appear to be inconsistent with, the 1995 document. By way of illustration, the 1995 document contains an entry for Mar. 19, 1995, which indicates that petitioner spent 3.5 hours studying and reviewing franchising information. The 1997 document contains an entry for Mar. 19, 1995, which indicates that petitioner flew to Portland and met with Mr. Caplan to discuss the purchase of cooking pots and other equipment. By way of further illustration, the 1995 document contains an entry for June 4, 1995, which indicates that petitioner spent 4.5 hours reviewing new franchising ideas on the internet. The 1997 document contains an entry for June 4, 1995, which indicates that petitioner flew to Portland, met with Mr. Caplan, and attended an employee meeting. Another illustration relates to an entry in

(continued...)

certain of the entries (1) in the 1995 document and the 1997
document with respect to the activities that petitioner claims he
undertook and (2) on the claimed meal receipts with respect to
the purposes for which petitioner claims he incurred the meal
expenses at issue to be vague and ambiguous.[15]  Based on our
evaluation of petitioner's testimony and the documentary evidence
on which he relies, we are not required to, and we shall not,
rely on that evidence in determining whether petitioner has

---

[14](...continued)
the 1997 document for Sept. 29, 1995, which indicates that
petitioner flew to Portland for an "emergency meeting w/Marc
Caplan to discuss firing of 2 employee [sic]".  The 1997 document
also lists Oct. 2, 1995, as possibly the date on which that
alleged emergency meeting took place.  The 1995 document does not
contain any entry for Sept. 29, 1995, or Oct. 2, 1995.  As a
final illustration, the 1997 document contains an entry for Dec.
20, 1995, which indicates that petitioner flew to Portland, met
with Mr. Caplan, drove to Tacoma on Dec. 23, 1995, returned to
Portland on Dec. 27, 1995, and had another meeting with Mr.
Caplan.  The 1995 document contains no entries for any of the
dates listed in the 1997 document on which petitioner claims he
was meeting with Mr. Caplan.

[15]By way of illustration of the vague and ambiguous nature
of some entries in the 1995 document, a number of those entries
claimed that petitioner undertook the following:  "analyse [sic]
national restaurant statistics from internet", "study & review
franchising from/on internet", "internet--review national
restaurant statistics to see how we compare", "look on internet
for stock market data to compare--vs--our #s", "study & review
text on franchising".  Although petitioner testified about
certain entries in the 1995 document, as indicated above, we
found his testimony to be questionable and not credible in
certain material respects.  By way of illustration of the vague
and ambiguous nature of some entries in the 1997 document and on
the claimed meal receipts, a number of those entries merely
indicated that the purpose of certain claimed meetings and
claimed meals was to discuss rental property or rental property
issues.

carried his burden of establishing error in respondent's determinations with respect to the two issues that remain in this case.

Chicken Bar

Respondent determined to disallow $19,212 of the $19,412 loss that petitioner claimed with respect to Chicken Bar on the ground that respondent determined that petitioner did not materially participate in the Chicken Bar business within the meaning of section 469(h)(1). Petitioner disagrees with respondent's determination. Before turning to the specific contentions of the parties in support of their respective positions, we shall set forth the general framework of section 469 and the regulations thereunder.

Pursuant to section 469(a), a passive activity loss of an individual for the taxable year is generally not allowed as a deduction for such year.[16] For this purpose, the passive activity loss for the taxable year is generally the amount, if any, by which the passive activity deductions for the taxable year exceed the passive activity gross income for such year. Sec. 469(d)(1).

As pertinent here, section 469(c) defines the term "passive activity" to include any activity which involves the conduct of

_____

[16]A disallowed passive activity loss for a taxable year is generally treated as a deduction allocable to a passive activity for the next year. Sec. 469(b).

any trade or business and in which the taxpayer does not materially participate. Sec. 469(c)(1). For purposes of section 469(c)(1), the term "trade or business" is defined in section 469(c)(6) to include any activity in connection with a trade or business or any activity with respect to which expenses are allowable as a deduction under section 212.

Section 469(h)(1) provides that generally an individual is to be treated as materially participating in an activity only if such individual is involved in the operations of the activity on a basis that is regular, continuous, and substantial. Congress expressly authorized the Secretary of the Treasury to prescribe such regulations as may be necessary or appropriate to carry out the provisions of section 469, including regulations that specify "what constitutes * * * material participation". Sec. 469(l)(1).

Both temporary and final regulations relating to the meaning of the terms "participation" and "material participation" have been promulgated under section 469. With respect to the term "participation", final regulations issued under section 469 provide that generally

> any work done by an individual (without regard to the capacity in which the individual does the work) in connection with an activity in which the individual owns an interest at the time the work is done shall be treated for purposes of this section as participation of the individual in the activity. [Sec. 1.469-5(f)(1), Income Tax Regs.]

Temporary regulations issued under section 469 provide certain

exceptions to that definition of participation.  As pertinent

here, section 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs.,

53 Fed. Reg. 5727 (Feb. 25, 1988), provides that work done by an

individual in such individual's capacity as an investor in an

activity is not to be treated as participation by the individual

in the activity unless the individual is involved in the day-to-

day management or operations of the activity.  For this purpose,

work done by an individual in such individual's capacity as an

investor in an activity includes:

>    (1) Studying and reviewing financial statements or
> reports on operations of the activity;

>    (2) Preparing or compiling summaries or analyses
> of the finances or operations of the activity for the
> individual's own use; and

>    (3) Monitoring the finances or operations of the
> activity in a non-managerial capacity.  [Sec. 1.469-
> 5T(f)(2)(ii)(B), Temporary Income Tax Regs., 53 Fed.
> Reg. 5727 (Feb. 25, 1988).]

Temporary regulations relating to the meaning of the term

"material participation" in section 469(h)(1) provide that, in

general,

>    an individual shall be treated, for purposes of section
> 469 and the regulations thereunder, as materially
> participating in an activity for the taxable year if
> and only if--

>    (1) The individual participates in the activity
> for more than 500 hours during such year;

>    (2) The individual's participation in the activity
> for the taxable year constitutes substantially all of
> the participation in such activity of all individuals
> (including individuals who are not owners of interests

in the activity) for such year;

(3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

(4) The activity is a significant participation activity (within the meaning of paragraph (c) of this section) for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

(5) The individual materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

(6) The activity is a personal service activity (within the meaning of paragraph (d) of this section), and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

(7) Based on all of the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year.  [Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988).]

According to petitioner, he is to be treated as having materially participated in the Chicken Bar business within the meaning of section 469(h)(1) because he satisfies both section 1.469-5T(a)(1) and (7), Temporary Income Tax Regs., 53 Fed. Reg.

5725-5726 (Feb. 25, 1988).[17] Respondent counters that petitioner does not comply with either of those provisions of the temporary regulations and that consequently he is not to be treated as having materially participated in the Chicken Bar business within the meaning of section 469(h)(1).

We turn first to section 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988), on which petitioner relies. According to petitioner, the 1995 document and his testimony establish that he spent 523 hours on activities relating to the conduct of the Chicken Bar business and that all of those hours must be taken into account in determining whether he satisfies section 1.469-5T(a)(1), Temporary Income Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). As we indicated above, we shall not rely on that evidence in determining whether petitioner has carried his burden of establishing that he satisfies that temporary regulation.[18] On the record before us, we find that

---

[17]Petitioner does not rely on sec. 1.469-5T(a)(2), (3), (4), (5), or (6), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988), in support of his position that he is to be treated as having materially participated within the meaning of sec. 469(h)(1) in the Chicken Bar business.

[18]Petitioner failed to call Mr. Caplan, the president of Chicken Bar who was involved in its day-to-day operations, as a witness to corroborate petitioner's position with respect to his claimed role in the Chicken Bar business. We infer from petitioner's failure to call Mr. Caplan that his testimony would not have been favorable to petitioner's position on the question of whether petitioner materially participated in the Chicken Bar business within the meaning of sec. 469(h)(1) and the regulations
(continued...)

petitioner has failed to carry his burden of proving that he is to be treated as having materially participated in the Chicken Bar business under section 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).[19]

We turn next to section 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), on which petitioner relies. Petitioner argues that, in applying that temporary regulation in this case, we should disregard section 1.469-5T(b)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).[20] That is because, according to petitioner, that

---

[18](...continued)
thereunder on which petitioner relies. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

[19]Assuming arguendo that we had found the 1995 document to be credible, on the record before us, we find that petitioner has failed to carry his burden of showing that many of the activities listed in that document constitute activities performed by him in his capacity as other than an investor. See sec. 1.469-5T(f)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). In this connection, petitioner's reliance on Mordkin v. Commissioner, T.C. Memo. 1996-187, is misplaced. Mordkin is distinguishable from the instant case.

[20]In determining whether a taxpayer is to be treated as materially participating in an activity under sec. 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), sec. 1.469-5T(b)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), provides:

(ii) Certain management activities. An individual's services performed in the management of an activity shall not be taken into account in determining whether such individual is treated as materially participating in such activity for the taxable year
(continued...)

latter temporary regulation is invalid.  In support of that

position, petitioner asserts:

> The regulation [section 1.469-5T(b)(2)(ii), Temporary
> Income Tax Regs.,53 Fed. Reg. 5726 (Feb. 25, 1988)] too
> simplistically uses the word management without any
> attempt to actually look at the surrounding facts and
> circumstances.  The regulation provides that ONLY one
> person can materially participate as a manager under
> the facts and circumstances test.  The regulation's
> test is two-fold.  No person is compensated and no
> other individual invests more hours in management of
> the activity.  This emasculates the regular,
> continuous, and substantial requirement.

We need not decide whether petitioner is correct in arguing

that section 1.469-5T(b)(2)(ii), Temporary Income Tax Regs., 53

Fed. Reg. 5726 (Feb. 25, 1988), is invalid.  That is because, on

the record before us,[21] we find that, without regard to that

---

[20](...continued)
under paragraph (a)(7) of this section unless, for such
taxable year--

    (A) No person (other than such individual) who
performs services in connection with the management of
the activity receives compensation described in section
911(d)(2)(A) in consideration for such services; and

    (B) No individual performs services in connection
with the management of the activity that exceed (by
hours) the amount of such services performed by such
individual.

    Petitioner concedes on brief that if we were to find sec.
1.469-5T(b)(2)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5726
(Feb. 25, 1988), to be valid, he does not satisfy that temporary
regulation.

    [21]As discussed above, we did not find petitioner's testimony
and the 1995 document to be credible, and we shall not rely on
that evidence.

temporary regulation, petitioner has failed to carry his burden of showing that he participated in the Chicken Bar business on a regular, continuous, and substantial basis during the year at issue and that he should be treated as having materially participated in the Chicken Bar business under section 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).  See sec. 469(h)(1).

Based on our examination of the entire record before us, we find that petitioner has failed to carry his burden of establishing that he is to be treated as having materially participated in the Chicken Bar business within the meaning of section 469(h)(1) and the regulations thereunder on which he relies.

Tacoma Property

Respondent determined that petitioner is not entitled to deduct petitioner's claimed traveling expenses of $4,896. Although not altogether clear, petitioner appears to contend that not only is respondent's determination wrong, but he is entitled to deduct an additional $760.75 of claimed traveling expenses with respect to the Tacoma property, or a total of $5,656.75.[22]

---

[22]The parties stipulated, and therefore respondent concedes, that petitioner paid the following expenses:

(continued...)

In support of respondent's position that petitioner is not entitled to deduct any of the traveling expenses that petitioner claims with respect to the Tacoma property, respondent contends that petitioner failed to prove (1) that those claimed expenses are ordinary and necessary expenses paid or incurred for the production or collection of income and/or for the management, conservation, or maintenance of property held for the production of income under section 212 and (2) that petitioner complied with the substantiation requirements of section 274(d).

An individual is allowed a deduction for all the ordinary and necessary expenses paid or incurred for the production or collection of income and for the management, conservation, or maintenance of property held for the production of income. Sec. 212(1) and (2). Section 274(d) operates to disallow any

---

[22](...continued)

| Type of Expense | Amount |
| --- | --- |
| Airplane flights | $1,443.00 |
| Car rentals | 478.63 |
| Meals | 2,476.22 |
| Parking | 263.00 |
| Hotels | 559.69 |
| Gasoline | 21.00 |
| Total | $5,241.54 |

In addition to the foregoing stipulated expenses that petitioner paid, petitioner contends that he is entitled to deduct with respect to the Tacoma property a car rental expense of $365.21 and a taxi expense of $50, both of which he claims he paid.

deduction otherwise allowable under section 212 for any traveling expense, including meals and lodging while away from home, sec. 274(d)(1), and for any item with respect to an activity that is of a type generally considered to constitute, inter alia, entertainment, such as a meal expense paid by a taxpayer for a guest, sec. 274(d)(2), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the individual's own statement the amount of such expense, the time and the place of the travel and entertainment, the business purpose of the expense, and the business relationship to the taxpayer of any person entertained. Rules for substantiation of each element of an expenditure for traveling and for entertainment are prescribed by section 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46014-46018 (Nov. 6, 1985).

According to petitioner, the 1997 document, the claimed car rental receipt, taxi receipt, and meal receipts and his testimony establish that he is entitled under section 212 to deduct the expenses at issue. As we indicated above, we shall not rely on that evidence in determining whether petitioner has carried his burden of establishing that he is entitled under section 212 to deduct those expenses. On the record before us, we find that petitioner has failed to carry his burden of proving that the expenses at issue constitute ordinary and necessary expenses paid or incurred for the production or collection of income and/or for

the management, conservation, or maintenance of property held for the production of income under section 212.  We further find on that record that petitioner has failed to carry his burden of establishing that he is entitled under section 212 to deduct any of those claimed expenses.[23]

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.

---

[23]Assuming arguendo that we had found that petitioner had satisfied his burden of showing that he is entitled under sec. 212 to deduct the expenses at issue, on the record before us, we find that petitioner has failed to satisfy his burden of showing that he complies with the substantiation requirements of sec. 274(d)(1) and (2) and the regulations thereunder with respect to those expenses.